UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ X

In re

**NEW YORK SKYLINE, INC.,**

                    **Debtor.**

------------------------------------------------

**NEW YORK SKYLINE, INC.,**

                    **Appellant,**

        - against -

**EMPIRE STATE BUILDING TRUST
COMPANY L.L.C. and EMPIRE STATE
BUILDING ASSOCIATES, L.L.C.,**

                    **Appellees.**

------------------------------------------------ X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/16/14
```

**OPINION AND ORDER**

**13 Civ. 7686 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Appellant New York Skyline Inc. ("Skyline") operates "SkyRide," a

helicopter simulator on the second floor of the Empire State Building (the

"Building"). Skyline and appellees[1] are parties to Lease and License agreements

---

[1]     The Building is owned by non-party Empire State Land Associates
L.L.C., which is wholly-owned by the Empire State Building Associates L.L.C.

entered into in February 1993, amended from time to time, and assumed by Skyline pursuant to section 365 of the Bankruptcy Code ("section 365") during its chapter 11 bankruptcy case.[2]

Skyline appeals from an Order and Final Judgment issued by Bankruptcy Judge Stuart M. Bernstein on September 11, 2013 (the "Judgment") in a pre-confirmation adversary proceeding.[3]  As a threshold matter, Skyline contends that under *Stern v. Marshall*,[4] Judge Bernstein lacked constitutional authority to

---

("ESBA"), the master lessee of the Building.  The Empire State Building Company L.L.C. ("ESBC") manages the Building, and the Empire State Building, Inc. ("ESBI") owns the leasehold for the observation decks located on the 86th and 102nd floors (the "Observation Decks").  *See Empire State Building Co. L.L.C. v. New York Skyline, Inc. (In re New York Skyline, Inc.)*, 479 B.R. 71, 76 (Bankr. S.D.N.Y. 2012) ("Authority Decision").  I refer to ESBC, ESBI and ESBA collectively as "ESB."

[2]    ESBA subleases the Building to ESBC.  ESBC and Skyline are parties to a sublease, as amended (the "Lease"), and a license, as amended (the "License"). *See id.*  Under the Lease and License, Skyline occupies space on the second and third floors of the Building and operates SkyRide.

[3]    *See* Adversary Proceeding Docket No. 108.  Citations to "Adv. Pro. Docket No. __" are to the docket in adversary proceeding number 09-01145. Citations to "Bankr. Docket No. __" are to the docket in Skyline's bankruptcy case.

[4]    564 U.S. __, 131 S. Ct. 2594 (2011).

enter a judgment in the adversary proceeding.[5]  On the merits, Skyline argues that Judge Bernstein committed reversible errors with respect to (1) ESB's claim that Skyline breached a provision of a 2005 Lease and License amendment (the "2005 Agreement") which prohibited Skyline from paying commissions or sales incentives to Skyline representatives working in certain areas; and (2) Skyline's claim that Article 42 of the Lease "requires ESB to bill Skyline based on a survey that estimates Skyline's actual consumption, as opposed to its estimated overall capacity to consume electricity."[6]  For the reasons set forth below, the Judgment is vacated and this case is remanded.

## II.    BACKGROUND

### A.    The 2005 Agreement

In April 2005, ESB moved the ticket office for the Observation Decks to the second floor of the Building and reversed the direction of the "West

---

[5]      *See* Appellant New York Skyline's Memorandum of Law in Support of Appeal from Decisions and Orders of the Bankruptcy Court ("Appellant Mem."), at 1.

[6]      *Id.* (citing *Empire State Building Co. L.L.C. v. New York Skyline, Inc. (In re New York Skyline, Inc.)*, No. 09-10181, 2013 WL 655991 (Bankr. S.D.N.Y. Feb. 22, 2013) ("Electricity Decision") and *New York Skyline, Inc. v. Empire State Building Co. L.L.C. (In re New York Skyline, Inc.)*, 497 B.R. 700 (Bankr. S.D.N.Y. 2013) ("Protocol Decision")).

Escalators" leading to SkyRide.[7]  Skyline brought an action against ESB in state court seeking declaratory, injunctive, and monetary relief relating to its right to access the West Escalators under the Lease.[8]  Prior to a hearing on Skyline's motion for a preliminary injunction, the parties executed the 2005 Agreement, and stipulated to discontinue the action with prejudice.  The 2005 Agreement permitted Skyline access to its premises through the West Escalators and addressed some, but not all, of the many disputes between the parties.[9]  One issue was ESB's concern "about Skyline representatives selling tickets in the Building and Skyline and other vendors clogging" entrances.[10]  In response, the parties agreed to a protocol provision requiring Skyline employees or representatives working in areas "of or near the building" to wear uniforms approved by ESB and prohibited them from being paid commissions or sales incentives.[11]

---

[7]     *See Empire State Building Co. L.L.C. v. New York Skyline, Inc. (In re New York Skyline, Inc.)*, 432 B.R. 66, 72 (Bankr. S.D.N.Y. 2010) ("*Skyline I*").

[8]     *See id.*

[9]     *See id.*

[10]    *See* Appellant Mem. at 3-4.

[11]    *See id.* at 4.

In July 2008, ESB served Skyline with a Notice to Cure demanding Skyline pay $431,000 in Building security fees claimed under the 2005 Agreement.[12]  On August 18, 2008, Skyline filed an action in state court (the "Skyline Action").[13]  The action was referred to the same judge that presided over the 2005 lawsuit.[14]

### B.    Skyline's Bankruptcy

#### 1.    Skyline's Chapter 11 Filing and the Removal of the Skyline Action

On January 12, 2009, Skyline filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Skyline's largest creditor by far was its secured lender, which held a claim of over $24 million as of the petition date.[15] Roughly ninety trade creditors held unsecured claims totaling $130,000.[16]  In

---

[12]    *See id.* at 7.

[13]    *See id.* at 7-8.

[14]    *See id.* at 8; *Skyline I*, 432 B.R. at 74 (describing ESB's conduct following the 2005 Agreement and noting that "[i]t became so bad that ESB's lawyers admitted that they were embarrassed").

[15]    *See* Debtor's Disclosure Statement with Respect to Debtor's Fourth Amended Plan of Reorganization ("Disclosure Statement") ¶ 9.

[16]    *See id.* ¶ 10.

addition, ESB asserted claims based on the disputes under the parties' agreements.

ESB filed an adversary proceeding against Skyline on March 4, 2009 (the "ESB Action"),[17] and removed the Skyline Action to the bankruptcy court on March 30, 2009.[18] The Notice of Removal states that the bankruptcy court has jurisdiction over the Skyline Action pursuant to Title 28, United States Code, sections 1334(b) and 1452(a) because the Skyline Action is "related to" Skyline's bankruptcy case.[19] The Notice of Removal also states that "[u]pon removal, the [Skyline Action] will be a 'non-core' matter, *see* 28 U.S.C. § 157(b)(2), and ESB does not consent to entry of final orders or a judgment by the Bankruptcy Court in the [Skyline Action]."[20]

### 2. The April 28, 2009 Hearing

On April 7, 2009, Skyline filed a motion requesting that Judge

---

[17]    The ESB Action was assigned adversary proceeding number 09-1107. The Judgment at issue in this appeal was entered in the Skyline Action; a separate judgment was entered in the ESB Action.

[18]    *See Skyline I*, 432 B.R. at 74.  I refer to the Skyline Action and the ESB Action collectively as the "adversary proceedings."

[19]    *See* Adv. Pro. Docket No. 1-1 ¶ 5.

[20]    *Id.* ¶ 6.

Bernstein either remand the Skyline Action or abstain, arguing that state law

predominated and the proceeding was non-core.[21]   The next day, Skyline filed a

motion in its bankruptcy case for a ninety-day extension of time to assume or reject

the Lease under section 365 of the Bankruptcy Code.[22]   Judge Bernstein considered

both motions at a hearing on April 28, 2009.[23]   He granted the ninety-day extension

under section 365, and denied the motion to remand or abstain reasoning that "the

issues were intertwined with the issues raised by Skyline's anticipated motion to

assume some or all of its agreements with ESB."[24]   Specifically, he determined that

the claims were core insofar as they related to the Lease assumption and

"arguably" core to the extent they related to the allowability of ESB's proof of

---

[21]        *See id.* No. 3.

[22]        *See* Bankr. Docket No. 24.  A chapter 11 debtor, "subject to the
court's approval, may assume or reject any executory contract or unexpired lease
of the debtor." 11 U.S.C. § 365(a).  When there has been a default, the debtor
generally must cure the default or otherwise compensate the contracting party in
order to assume the contract.  *See id.* § 365(b)(1).  The debtor must assume a lease
for nonresidential real property by the earlier of 120 days from the filing of the
petition or the date of confirmation of a plan or it is deemed rejected.  *See id.* §
365(d)(4)(A).  The 120-day period may be extended for an additional 90 days
without consent of the lessor provided the request for extension is made within the
120-day period.  *See id.* § 365(d)(4)(B).

[23]        *See* 4/28/09 Hearing Transcript ("4/28/09 Tr."), Bankr. Docket No.
30.

[24]        *Skyline I*, 432 B.R. at 74.

claim.[25]  Judge Bernstein later entered a stipulation and order which fast-tracked claims in the adversary proceedings believed to be relevant to Skyline's decision to assume or reject the Lease under section 365.[26]

### 3.   The Adversary Proceedings, the First Motions for Summary Judgment, and the Assumption of the Lease and License

The ESB Action asserted eleven claims.[27]  Count I sought a declaratory judgment that the 2005 Agreement was part of the Lease and the License and therefore would need to be assumed along with the Lease and the License.[28]  Counts II through X sought declaratory relief, injunctive relief, and specific performance in connection with conduct by Skyline alleged to violate provisions of the Lease.[29]  Count XI sought attorneys' fees under the Lease for ESB's expenses in connection with bringing the ESB Action.[30]  ESB alleged that its claims were "core matters pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (O),

---

[25]     4/28/09 Tr. at 26.

[26]     *See* Adv. Pro. Docket No. 8.  In addition, the adversary proceedings were jointly administered for trial purposes.

[27]     *See* Complaint, Docket No. 1 in adversary proceeding number 09-1107.

[28]     *See id.* ¶¶ 98-104.

[29]     *See id.*  ¶¶ 105-153.

[30]     *See id.* ¶¶ 154-157.

among others."[31]  In its Answer, Skyline stated that the allegation was a legal

conclusion to which no response was necessary, but in any event denied

knowledge as to the truth or falsity of the allegation.[32]

Skyline filed a Second Amended Complaint on May 1, 2009, and a

Third Amended Complaint (the "Complaint") on July 29, 2009.[33]  The Complaint

asserts claims for rescission of the 2005 Agreement, declaratory judgment,

injunctive relief, breach of specific provisions of the Lease and License, unjust

enrichment, prima facie tort, and tortious interference with contract.  In addition,

Count Nineteen asserts claims for turnover and violations of the automatic stay

pursuant to sections 542 and 362 of the Bankruptcy Code in connection with

breaches of the Lease and License agreements.

The Complaint alleges that jurisdiction is proper because the claims

either arise in title 11, under title 11, or are related to the pending chapter 11 case.[34]

It also states that "[f]or the reasons articulated by the Hon. Stuart M. Bernstein on

April 28, 2009 in connection with the denial of Skyline's motion to remand, the

---

[31]     *Id.* ¶ 10.

[32]     *See* Answer, Docket No. 10 ¶ 10 in Adv. Pro. No. 09-1107.

[33]     *See* Adv. Pro. Docket Nos. 5, 30.

[34]     *See* Complaint ¶ 25.

causes of action alleged in this Complaint are "core" matters pursuant to 28 U.S.C.
§ 157(b)(2)."[35]  On September 15, 2009, ESB filed an answer and asserted nine
counterclaims.[36]

On July 17, 2009, in connection with the order expediting claims
relevant to Skyline's decision to assume or reject the Lease, the parties cross-
moved for partial summary judgment.  In its motion, Skyline sought a
determination that Article 42 of the Lease, relating to electricity charges, is
ambiguous.  ESB moved with respect to five of Skyline's claims, including the
Third Claim, which was to rescind the 2005 Agreement.  Just after the motions
were filed, Skyline moved to assume the Lease.[37]  On July 28, 2009, during oral
argument on the motions for summary judgment, Skyline indicated it would seek
assumption of the Lease regardless of whether it could rescind the 2005
Agreement.  On September 17, 2009, Judge Bernstein granted Skyline's motion to
assume over ESB's objection.[38]  Pursuant to the assumption order, Skyline
assumed both the Lease and License, paid $306,991.02 to ESB in undisputed cure

---

[35]     *Id.* ¶ 26.  *See generally* 4/28/09 Hearing Tr.

[36]     *See* Adv. Pro. Docket No. 33.

[37]     *See* Bankr. Docket No. 38.

[38]     *See id.* No. 57.

amounts, and was directed to escrow $768,120.76 for disputed cure amounts.[39]

Among the disputed items were "security charges, access fees, electrical charges,

late fees, and attorneys' fees."[40]

      Judge Bernstein issued his decision on the parties' cross-motions on

June 21, 2010.  He dismissed Skyline's rescission claim in part because the Lease,

License, and 2005 Agreement were a single, indivisible agreement for purposes of

assumption under section 365.[41]  Judge Bernstein concluded that by assuming the

2005 Agreement, Skyline had ratified it, which barred a claim for rescission.[42]  He

denied Skyline's request for a determination that Article 42 is ambiguous, holding

that it was "not appropriate to use summary judgment as a vehicle for fragmented

adjudication of non-determinative issues."[43]

### 4.    Plan Confirmation

      On August 13, 2010, Skyline filed a Fourth Amended Chapter 11 Plan

---

[39]    *See id.*

[40]    *Id.*

[41]    *See Skyline I*, 432 B.R. at 76-77.

[42]    *See id.* at 82.

[43]    *Id.* at 88 (quotation marks omitted).

of Reorganization (the "Plan"),[44] which was confirmed on October 12, 2010.[45]

Article 11 of the Plan is a retention of jurisdiction provision.  It states in relevant

part that the court retained jurisdiction "(b) To determine any and all adversary

proceedings, applications, and contested matters that are pending on the Effective

Date"; "(i) To hear and determine all Claims, controversies, suits and disputes

*against the Debtor* to the full extent permitted under 18 U.S.C. § 1334 and 28

U.S.C. § 157"; and "(j) To hear, determine and enforce all Claims and causes of

action which may exist *on behalf of the Debtor* or the Debtor's Estate, including,

but not limited to, any right of the Debtor or the Debtor's Estate to recover assets

pursuant to the provisions of the Bankruptcy Code."[46]  On February 28, 2011,

Judge Bernstein entered a Final Decree after determining that the Plan had been

substantially consummated, and closed Skyline's bankruptcy case.[47]  The Final

Decree provided that "the Bankruptcy Court shall retain jurisdiction over the

pending adversary proceedings" between Skyline and ESB.[48]

---

[44]     *See* Bankr. Docket No. 132.  Confirmation of Skyline's Third
Amended Plan was denied in July 2010 after a confirmation hearing at which ESB
was the only objecting party.  *See id.* No. 130.

[45]     *See id.* No. 144.

[46]     *Id.* No. 132 § 11.1(b), (i), (j) (emphasis added).

[47]     *See id.* No. 164.

[48]     *Id.*

**5.     The Parties' Remaining Claims, ESB's Motion for Partial Summary Judgment, and the Authority Decision**

On June 17, 2011, the parties filed a Joint Final Pretrial Order in which each side agreed to voluntarily dismiss a number of claims.[49]  As a result of the parties' agreements and Judge Bernstein's earlier summary judgment ruling, Skyline's five remaining claims were the Fourth Claim, but only to the extent it sought a declaration that ESB breached certain contractual duties; the Twelfth Claim, for damages and declaratory relief in connection with the electricity charges; the Fourteenth Claim, for damages for breach of the covenant of good faith and fair dealing; the Fifteenth Claim, for prima facie tort; and the Eighteenth Claim, for tortious interference with contract.  Of the twenty claims or counterclaims brought by ESB, eight were submitted for trial – the cause of action for attorneys' fees, and seven counterclaims requesting declaratory relief, specific performance, and injunctive relief relating to various disputes under the parties' agreements, including the protocol provision.[50]

On July 15, 2011, ESB filed a motion for partial summary judgment.[51]

---

[49]     *See* Adv. Pro. Docket No. 48.

[50]     *See id.*  On July 6, 2011, the parties entered into a stipulation dismissing each cause of action except for the claim for attorneys' fees.  *See id.* Docket No. 53.

[51]     *See id.* Docket No. 55.

Prior to its time to file opposition, Skyline raised concerns based on *Stern v.*

*Marshall* and asked for an extension of time to brief the issue.[52]  Judge Bernstein's

memorandum endorsement and order stated that:

> It is not clear whether the limitation on a bankruptcy court's
> jurisdiction to 'hear and determine' a non-core matter would be
> implicated by the Empire State Building's motion for partial
> summary judgment.  Regardless of the disposition, the Court will
> not make any findings of fact or enter a final judgment.
> Furthermore, it appears that the parties have consented to the
> Court's authority to 'hear and determine' all of the issues, at least
> in adversary proceeding 09-1145.  [Skyline] alleged in its Third
> Amended Complaint . . . that the causes of action alleged in the
> complaint were core, and [ESB] admitted the allegation in its
> Answer . . . .[53]

Nonetheless, Judge Bernstein permitted the parties to make the argument that the

bankruptcy court lacked "the power to 'hear and determine' the motion or the

adversary proceedings, or that it lack[ed] the subject matter jurisdiction even to

make a 'report and recommendation' to the District Court . . . ."[54]  In addition, he

directed each party "to advise the Court[] in writing[] . . . whether it expressly

consents to the bankruptcy court's authority to 'hear and determine' and enter final

---

[52]     *See* Bankr. Docket No. 167.

[53]     Adv. Pro. Docket No. 62.

[54]     *Id.*

judgments in these adversary proceedings."[55]  Judge Bernstein concluded that "[i]n the event the parties do not expressly consent, or are not deemed to have impliedly consented, the Court will proceed in accordance with Rule 9033 of the Federal Rules of Bankruptcy Procedure."[56]  ESB filed a letter indicating that it consented to the bankruptcy court's authority, and Skyline filed a letter indicating that it did not.[57]

In its opposition to ESB's motion for partial summary judgment, Skyline questioned the bankruptcy court's jurisdiction and authority to enter a final judgment and sought remand to the state court.[58]  Skyline stated that it never conceded that its claims were core and that its section 157(b)(2) allegation in the Complaint indicated only that the claims were core "'[f]or the reasons articulated by the Hon. Stuart M. Bernstein on April 28, 2009 . . . .'"[59]  On the issue of

---

[55]     *Id.*

[56]     *Id.*  Rule 9033(a) provides that "[i]n non-core proceedings heard pursuant to 28 U.S.C. §157(c)(1), the bankruptcy judge shall file proposed findings of fact and conclusions of law."

[57]     *See* Adv. Pro. Docket No. 63; Bankr. Docket No. 168.

[58]     *See* Adv. Pro. Docket No. 65 at 10-20.

[59]     *Id.* at 12 (quoting Complaint ¶ 26); 4/28/09 Hearing Tr. at 26 (bankruptcy court held that certain claims were core and others were "arguably" core).  In addition, Skyline indicated that it had "abandoned its right to a jury trial on its tort claims because research disclosed that a motion to withdraw the

consent, Skyline argued that "[a]ny such consent would surely have been by implication, but based on the mandate of the Bankruptcy Court after it had rejected Skyline's efforts to return these matters to state court."[60]  Skyline further argued that its consent could not have been "unequivocal or free of duress" because it "had no immediate appeal rights once remand and abstention were denied."[61]

ESB argued that for the most part *Stern* was not relevant to the issues before Judge Bernstein because *Stern* did not address subject matter jurisdiction.[62] However, ESB stated that *Stern* confirmed that Judge Bernstein had authority to resolve Skyline's claims against ESB because they are "part of the allowance or disallowance of ESB's claims against the estate."[63]  ESB further argued that Skyline expressly consented to allowing Judge Bernstein to enter final orders in the adversary proceedings as part of the Plan.  In this regard, ESB noted that the Plan

---

reference would be futile in June 2011."  Adv. Pro. Docket No. 65 at 19.  ESB's remaining claims were counterclaims relating to the protocol provision in the 2005 Agreement, Skyline's right to sell New York City-themed memorabilia at the gift shop, and matters concerning the fire alarm system, and its claim for attorneys' fees.  *See id.* at 14.

[60]     Adv. Pro. Docket No. 65 at 18.

[61]     *Id.* at 19.

[62]     *See id.* No. 70 at 3-5.

[63]     *Id.* at 5.

"uses bankruptcy terms of art regarding the Court's authority to 'hear' and to 'determine' certain matters."[64]

On May 11, 2012, Judge Bernstein issued the Authority Decision. He stated that at the time the Skyline Action was removed and the ESB Action was commenced "the claims and counterclaims asserted, at a minimum, 'related to' or were non-core claims in Skyline's bankruptcy case."[65] He reasoned that because jurisdiction is determined at the time an action is commenced, "[n]either the confirmation of Skyline's plan nor anything else that subsequently occurred deprived this Court of its subject matter jurisdiction over those claims and counterclaims."[66] Judge Bernstein held that he could enter a final judgment on the parties' claims because both parties had expressly consented to such authority – ESB in its letter, and Skyline in the Plan.[67] He noted that "nothing compelled Skyline to include these provisions in the Plan" and that the provisions, "[s]eparately and in combination, . . . reflect Skyline's consent to this Court's

---

[64]    *Id.* at 9 (citing 28 U.S.C. § 157(b)(1) and (c)(1)).

[65]    Authority Decision, 471 B.R. at 78.

[66]    *Id.* at 79 (citing *In re Porges*, 44 F.3d 159 (2d Cir. 1995)).

[67]    *See id.* (citing to Plan § 11.1(b) and (j)).

authority to hear and determine, and enter final judgments in connection" with the parties' claims.[68]  With respect to ESB's claim for attorneys' fees, Judge Bernstein held that it was core, and therefore consent was not required, because Skyline was required to cure defaults when it assumed the Lease pursuant to section 365.[69]  On the merits, Judge Bernstein granted ESB's motion as to three of Skyline's claims, leaving only the Twelfth Claim, relating to the electricity charges, and the Fourth claim, relating to other alleged breaches.  In addition, Judge Bernstein granted partial summary judgment in favor of ESB on its claim for attorneys' fees asserted in the ESB Action, but held that ESB was not entitled to pursue a counterclaim for attorneys' fees in the Skyline Action.[70]

### 6.    The Trials

Trial was held on the electricity claim in the Skyline Action on September 24 and October 24, 2012.[71]  Following the trial, ESB moved for judgment on partial findings.  On February 22, 2013, Judge Bernstein issued the

---

[68]     *Id.*

[69]     *See id.* at 80.

[70]     *See id.* at 85.

[71]     *See* Adv. Pro. Docket Nos. 84, 86.

Electricity Decision, which granted ESB's motion and dismissed Skyline's Twelfth Claim.  A second trial was held on May 6 and 7, 2013, relating to, among other things, the use of independent contractors to sell tickets in areas "of or near the Building."[72]  On August 20, 2013, Judge Bernstein issued the Protocol Decision, noting at the outset that "[b]oth sides have consented to the Court's authority to enter a final judgment in this matter."[73]  He found that ESB was entitled to a declaration that a specified area between 36th Street and 31st Street was "of or near the Building" and thus Skyline breached the 2005 Agreement by paying independent contractors working within that area.[74]  Judge Bernstein permanently enjoined Skyline from paying commissions to any employees or representatives working within a specified area.[75]  Skyline's subsequent motion for a stay of the

---

[72]     *See id.* Nos. 98, 99.

[73]     Protocol Decision, 497 B.R. at 703 n.3 (citing Authority Decision, 472 B.R. at 79-80).

[74]     *See id.* at 715-16.

[75]     Judge Bernstein also found that (1) ESB did not breach the parties' agreements relating to the installation of television monitors and signage and (2) Skyline breached the Lease provision regarding the sale of souvenirs, but did not breach the provision that prohibits Skyline from paying commissions or sales incentives to its employees.  *See id.* at 703.

injunction pending this appeal was denied on October 10, 2013.[76]  Skyline appeals

the issuance of the injunction, but not the denial of the stay pending appeal.[77]

## III.   LEGAL STANDARD

A district court functions as an appellate court in reviewing

judgments rendered by bankruptcy courts.[78]  Findings of fact are reviewed for clear

error,[79] whereas findings that involve questions of law, or mixed questions of fact

and law, are reviewed de novo.[80]  A district court "may affirm, modify, or reverse a

bankruptcy judge's judgment, order, or decree or remand with instructions for

further proceedings."[81]

---

[76]    *See New York Skyline, Inc. v. Empire State Building Co. L.L.C. (In re New York Skyline, Inc.)*, No. 09-1145, 2013 WL 5487938 (Bankr. S.D.N.Y. Oct. 10, 2013).

[77]    On October 18, 2013, Judge Bernstein entered a money judgment of $20,000 on ESB's claim for attorneys' fees and closed the ESB Action.  *See* Docket No. 65 in adversary proceeding number 09-1107.

[78]    *See In re Sanshoe Worldwide Corp.*, 993 F.2d 300, 305 (2d Cir. 1993).

[79]    *See* Fed. R. Bankr. P. 8013 ("Findings of fact . . . shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.").

[80]    *See In re Adelphia Commc'ns Corp.*, 298 B.R. 49, 52 (S.D.N.Y. 2003) (citing *In re United States Lines, Inc.,* 197 F.3d 631, 640-41 (2d Cir. 1999)).

[81]    Fed. R. Bankr. P. 8013.

## IV.    APPLICABLE LAW

### A.    Bankruptcy Jurisdiction and Bankruptcy Court Authority

Section 1 of Article III of the United States Constitution provides that

> The judicial Power of the United States shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish.  The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services a Compensation, which shall not be diminished during their Continuance in Office.

Under Article III, Congress cannot

> withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty. . . . At the same time there are matters, involving public rights, which may be presented in such form that the judicial power is capable of acting on them, and which are susceptible of judicial determination, but which congress may or may not bring within the cognizance of the courts of the United States, as it may deem proper.[82]

Since the enactment of the first federal bankruptcy law in 1800, Congress has permitted the initial adjudication of certain bankruptcy issues by non-Article III officials, subject to review by the district court.[83]  For example, prior to the

---

[82]    *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 284 (1856).

[83]    *See* Plank, *Why Bankruptcy Judges Need Not and Should Not Be Article III Judges*, 72 Am. Bankr. L.J. 567, 607-609 (1998).

Bankruptcy Act of 1978 (the "Act"),

> federal district courts served as bankruptcy courts and employed a "referee" system. Bankruptcy proceedings were generally conducted before referees, except in those instances in which the district court elected to withdraw a case from a referee. The referee's final order was appealable to the district court. The bankruptcy courts were vested with "summary jurisdiction" – that is, with jurisdiction over controversies involving property in the actual or constructive possession of the court. And, with consent, the bankruptcy court also had jurisdiction over some "plenary" matters – such as disputes involving property in the possession of a third person.[84]

As explained in the Senate Report, a central purpose of the Act was to eliminate the "great cost and delay to the estate" that resulted from the inability of bankruptcy courts to adjudicate plenary matters without consent.[85]  To accomplish this goal without running afoul of the Constitution, many, including the House, advocated giving bankruptcy judges Article III status, but this effort was unsuccessful.  Instead, the Act "eliminat[ed] the distinction between 'summary' and 'plenary' jurisdiction, [and] grant[ed] the new [bankruptcy] courts jurisdiction over all civil proceedings arising under title 11 or arising in *or related to* cases

---

[84]    *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 53 (1982) ("*Marathon*") (citations omitted).

[85]    S. Rep. No. 95-989, at 153 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 5939.

under title 11."[86]

The plurality opinion in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, invalidated this broad grant of authority. The Supreme Court held that a bankruptcy court did not have constitutional authority to enter a final judgment adjudicating a contract claim against a party not otherwise a part of the bankruptcy proceedings. As explained by Justice Brennan:

> [T]he restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages that is at issue in this case. The former may well be a "public right," but the latter obviously is not. Appellant Northern's right to recover contract damages to augment its estate is "one of private right, that is, of the liability of one individual to another under the law as defined."[87]

By entering a judgment, the Article I bankruptcy court improperly exercised the "judicial Power of the United States," which is vested in Article III courts where judges have life tenure and salary protections. In response, Congress enacted the 1984 amendments to the Judicial Code, which are contained in the Bankruptcy

---

[86]     *Marathon*, 458 U.S. at 54 (quotation marks and alterations omitted) (emphasis in original).

[87]     *Id.* at 71-72 (quoting *Crowell v. Benson*, 285 U.S. 22, 51 (1932)).

Amendments and Federal Judgeship Act of 1984.[88]  The 1984 Amendments addressed the concerns raised in *Marathon* by making a distinction between proceedings that are "core" and those that are considered "noncore,"[89] and limiting the role of the bankruptcy court with respect to the latter.

       Section 1334 of title 28 of the United States Code addresses bankruptcy jurisdiction, and section 157, which permits the district courts to refer bankruptcy matters to bankruptcy courts,[90] delineates the division of labor between the district court and the bankruptcy court.[91]  While sections 1334 and 157 serve different purposes, the language of each tracks the other.  Section 1334(b)[92] states

---

[88]     *See* Pub. L. No. 98-353, § 122(b) (1984).

[89]     *See Pied Piper Casuals, Inc. v. Insurance Co. of the State of Pennsylvania*, 72 B.R. 156, 158 (S.D.N.Y. 1987).

[90]     The United States District Court for the Southern District of New York has referred its bankruptcy jurisdiction to the bankruptcy courts of this district pursuant to its Amended Standing Order of Reference, 12 Misc. 00032 (S.D.N.Y. Jan. 31, 2012).

[91]     *See, e.g.*, *Stern*, 131 S. Ct. at 2607 (stating that once referred, "[s]ection 157 allocates the authority to enter final judgment between the bankruptcy court and the district court").  In addition, section 158 governs appeals from bankruptcy court orders.

[92]     Under paragraph (a), the district courts "have original and exclusive jurisdiction of all cases under title 11."  A bankruptcy "case" is commenced by filing a petition for relief under title 11.

that the district courts have original, but not exclusive, "jurisdiction of all civil proceedings[93] *arising under* title 11, or *arising in* or *related to* cases under title 11."[94]  Section 157 permits bankruptcy courts to enter final judgments in "core" proceedings,[95] which are defined, using the same terms as in section 1334, as proceedings "that arise in a bankruptcy case or under Title 11."[96]  Thus, bankruptcy

---

[93]  "Proceedings" is interpreted broadly to include any civil matter or dispute that occurs during the administration of a bankruptcy case.

[94]  The district court has jurisdiction if a proceeding comes within any of these three categories.  *See Stern*, 131 S. Ct. at 2603.  "'Arising under' jurisdiction exists where one invokes a substantive right created by federal bankruptcy law." *Glinka v. Murad (In re Housecraft Indus. USA, Inc.)*, 310 F.3d 64, 70 (2d Cir. 2002).  "'[A]rising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy."  *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987). *Accord Baker v. Simpson*, 613 F.3d 346, 351 (2d Cir. 2010) (same).  A proceeding is "related to" a case under title 11, "if the outcome of the litigation might have any conceivable effect on the bankruptcy estate, or has any significant connection with the bankrupt estate." *Lead I JV, LP v. North Fork Bank*, 401 B.R. 571, 581 (E.D.N.Y. 2009) (quotation marks omitted).  *Accord Publicker Indus., Inc. v. United States (In re Cuyahoga)*, 980 F.2d 110, 114 (2d Cir. 1992) ("The test for determining whether litigation has a significant connection with a pending bankruptcy proceeding is whether its outcome might have any conceivable effect on the bankrupt estate.") (quotation marks omitted).

[95]  28 U.S.C. § 157(b)(1).

[96]  *See Stern*, 131 S. Ct. at 2605; 28 U.S.C. § 157(b)(1) ("Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to

courts retain the same powers with respect to core matters as they had under the Act.[97]

However, section 157 limits a bankruptcy judge's authority in "related to" proceedings.  Under section 157(c)(1)

> [a] bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise *related to* a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions . . . .

Significantly, a bankruptcy judge may also enter a final judgment on non-core claims if the parties consent.[98]  Pursuant to section 157(b)(3), "[t]he bankruptcy judge shall determine . . . whether a proceeding is a core proceeding . . . or is a proceeding that is otherwise related to a case under title 11."[99]  As explained by the

---

review under section 158 of this title.").  Section 157(b)(2) sets forth examples of "core" proceedings.

[97]     *See Stern*, 131 S. Ct. at 2610.

[98]     *See* 28 U.S.C. § 157(c)(2); *In Men's Sportswear, Inc. v. Sasson Jeans, Inc. (In re Men's Sportswear, Inc.)*, 834 F.2d 1134, 1137-38 (2d Cir. 1987).

[99]     *See also* Fed. R. Bankr. P. 7008(a) ("In an adversary proceeding before a bankruptcy judge, the complaint, counterclaim, cross-claim, or third-party complaint shall contain a statement that the proceeding is core or non-core and, if non-core, that the pleader does or does not consent to entry of final orders or

Supreme Court, "[t]he terms 'non-core' and 'related' are synonymous."[100]

In *Stern*, the Supreme Court held that the current statutory regime failed to remedy all the constitutional infirmities identified in *Marathon*. Specifically, a bankruptcy court improperly exercised the "judicial Power of the United States" by entering a final judgment on a common law counterclaim by the estate against a creditor for tortious interference, despite the fact that such a claim is characterized by the Bankruptcy Code as a "core" claim under section 157(b)(2)(C).[101]  Thus, "bankruptcy courts must define the core/non-core

---

judgment by the bankruptcy judge."); *id.* 7012(b) ("A responsive pleading shall admit or deny an allegation that the proceeding is core or non-core. If the response is that the proceeding is non-core, it shall include a statement that the party does or does not consent to entry of final orders or judgment by the bankruptcy judge. In non-core proceedings final orders and judgments shall not be entered on the bankruptcy judge's order except with the express consent of the parties.").

[100]    *Stern*, 131 S. Ct. at 2605 (quotation marks omitted).

[101]    *See id.* at 2608.  Following *Marathon*, the Second Circuit noted that "both the Supreme Court and this court have concluded that the *Marathon* holding was a narrow one and have broadly construed the jurisdictional grant in the 1984 Bankruptcy Amendments."  *In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 705 (2d Cir. 1995).  Likewise, the Second Circuit has indicated that *Stern* should be construed narrowly.  *See In re Quigley Co., Inc.*, 676 F.3d 45, 52 (2d Cir. 2012) (noting that the holding of *Stern* was narrow, and that "[e]njoining litigation to protect bankruptcy estates during the pendency of bankruptcy proceedings, unlike the entry of the final tort judgment at issue in *Stern*, has historically been the province of the bankruptcy courts.").  Nonetheless, a number of courts in this Circuit have applied *Stern* to limit the authority of bankruptcy courts to enter final

distinction on a case by case basis by evaluating both the form and the substance of the particular proceeding."[102]

### B.   Bankruptcy Jurisdiction Beyond Section 1334

"The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute."[103]   Nonetheless, courts have held that bankruptcy courts have inherent or ancillary jurisdiction to enforce their own orders.[104]   According to the Supreme Court, federal courts may assert ancillary jurisdiction for two separate, though sometimes related, purposes: "(1) to permit

---

judgments on claims that are often integral to the bankruptcy process, such as actions to set aside fraudulent conveyances.  *See, e.g.*, *In re Madison Bentley Assocs., LLC*, 474 B.R. 430, 438-39 (S.D.N.Y. 2012) (stating that "[c]ourts . . . have consistently held that, after *Stern*, bankruptcy courts lack authority to issue final judgments on fraudulent conveyance claims").

[102]     *In re Ames Dep't Stores, Inc.*, No. 06 Civ. 5394, 2008 WL 7542200, at *6 (S.D.N.Y. June 4, 2008).

[103]     *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995).

[104]     *See, e.g.*, *In re Petrie Retail*, *Inc.*, 304 F.3d 223, 230 (2d Cir. 2002) ("A bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders."); *In re Chateaugay Corp.*, 213 B.R. 633, 638 (S.D.N.Y. 1997); *In re Fibermark, Inc.*, 369 B.R. 761, 765 (Bankr. D. Vt. 2007) (citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934) ("That a federal court of equity has jurisdiction of a bill ancillary to an original case or proceeding in the same court, whether at law or in equity, to secure or preserve the fruits and advantages of a judgment or decree rendered therein, is well settled.")).

disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees."[105]

The Second Circuit has also held that bankruptcy courts may exercise supplemental jurisdiction.[106]  However, some lower courts have questioned the exercise of such jurisdiction.[107]  As explained by one court

> the jurisdictional grant in 28 U.S.C. § 1334(b) and 28 U.S.C. § 157, by implication, negates a bankruptcy court's exercise of jurisdiction of a supplemental non-federal claim in instances where that claim has no impact on the bankruptcy estate.  The carefully crafted conferral of jurisdiction under 28 U.S.C. § 1334 and 28 U.S.C. § 157 would be undermined if bankruptcy courts were authorized to exercise supplemental jurisdiction.[108]

---

[105]   *Peacock v. Thomas*, 516 U.S. 349, 354 (1996) (citing *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 380-81 (1994)).

[106]   *See Klein v. Civale & Trovato, Inc. (In re Lionel Corp.)*, 29 F.3d 88, 92 (2d Cir. 1994).

[107]   *See generally In re Cavalry Const., Inc.*, 496 B.R. 106 (S.D.N.Y. 2013) (discussing cases); *In re Dreier LLP*, No. 10-5456, 2012 WL 4867376, at *4 (Bankr. S.D.N.Y. Oct. 12, 2012) ("'There is a serious question whether the supplemental jurisdiction statute is applicable to the jurisdiction exercisable by bankruptcy judges.'") (quoting 16 Daniel R. Coquillette, et al., Moore's Federal Practice § 106.05[10], at 106.34.2(1) (3d ed. 2012)).

[108]   *Enron Corp. v. Citigroup, Inc. (In re Enron Corp.)*, 353 B.R. 51, 61 (Bankr. S.D.N.Y. 2006) (citing *In re Walker*, 51 F.3d 562, 573 (5th Cir. 1995) ("[I]t would be somewhat incongruous to gut this careful system [of 'core' and

In addition, the Second Circuit has held that a bankruptcy court may retain

jurisdiction over an adversary proceeding even after the bankruptcy case has been

dismissed provided that the exercise of jurisdiction would be consistent with the

principles of pendent jurisdiction.[109]  In that case, the adversary proceeding was

core because it was brought under section 502 of the Bankruptcy Code to

"determine the validity of the claims and the amount allowed."[110]  Prior to the

debtor's election to voluntarily dismiss his case, the bankruptcy court "had

conducted a trial on all contested issues and had issued a decision, and the matter

awaited only the filing of findings of fact and conclusions of law and the entry of a

---

'non-core' bankruptcy court jurisdiction] by allowing bankruptcy courts to exercise supplemental jurisdiction.")).

[109]    *See Porges*, 44 F.3d at 162-63 (stating that when jurisdiction is retained following dismissal "a court must consider four factors in determining whether to continue to exercise jurisdiction: judicial economy, convenience to the parties, fairness and comity").  As a general rule, courts are required to analyze the *Porges* factors when deciding to retain jurisdiction.  *See, e.g.*, *In re Millenium Seacarriers, Inc.*, 458 F.3d 92, 96 (2d Cir. 2006) (stating that "a party that has not objected to the forum court's failure to make specific findings relevant to the *Porges* factors is not entitled to remand for such findings (or, for that matter, a dismissal of the action) when we are satisfied that the forum court did not improperly exercise subject matter jurisdiction by abusing its discretion in retaining jurisdiction").

[110]    *Porges*, 44 F.3d at 164 (quotation marks and alterations omitted).

30

judgment."[111]   The Second Circuit held that the Bankruptcy Court had authority under section 502 to enter a money judgment[112] and further that "the exercise of a court's equitable powers to enter judgment is particularly appropriate where the court's decision would have preclusive effect in any subsequent proceedings."[113]

Although a bankruptcy court's jurisdiction shrinks following confirmation of a plan, a bankruptcy court may retain post-confirmation jurisdiction pursuant to the plan.[114]   A party seeking post-confirmation relief must satisfy two requirements:

> *First*, the party must establish that the matter has a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan.  *Second*, the party must

---

[111]   *Id.* at 163.

[112]   *See id.* at 164.

[113]   *Id.* at 165.  Other Second Circuit decisions that considered retention of jurisdiction under *Porges* have also involved contexts that invoke principles of ancillary jurisdiction.  *See Millenium Seacarriers, Inc.*, 458 F.3d at 96 ("[J]udicial economy and convenience to the parties are both served by the Bankruptcy Court's interpretation of its own Sale Order due to its familiarity with the facts.  Fairness and comity are not affected either way.") (quotation marks omitted); *In re Aquatic Dev. Group, Inc.*, 352 F.3d 671, 676 (2d Cir. 2003) (interpretation of confirmation order)).

[114]   *See Hospital & Univ. Property Damage Claimants v. Johns–Manville Corp. (In re Johns–Manville Corp.)*, 7 F.3d 32, 34 (2d Cir. 1993).

> show that the plan provides for the retention of jurisdiction over the dispute.  Courts have found the requisite nexus where adjudication of the post-confirmation dispute will affect the interests of creditors or requires interpretation of the reorganization plan.  However, where the case has been fully administered and the interests of creditors will be unaffected by the resolution of the dispute, bankruptcy courts have declined to exercise post-confirmation subject matter jurisdiction.[115]

The scope of post-confirmation jurisdiction following the entry of a final decree and closure of a case has not been well defined,[116] although courts agree that such jurisdiction is more limited.[117]

## V.   DISCUSSION

### A.   Skyline Did Not Consent to the Bankruptcy Court's Entry of a Final Judgment

Pursuant to section 157(b)(3), Judge Bernstein was required to determine whether the adversary proceedings were core or non-core.  He addressed the status of the claims on April 28, 2009, in the context of Skyline's remand motion and request under section 365, and determined that the claims were core insofar as they related to the Lease assumption and "arguably" core to

---

[115]   *In re Kassover*, 448 B.R. 625, 632-33 (S.D.N.Y. 2011) (quotation marks omitted).

[116]   *See, e.g.*, *Fibermark*, 369 B.R. at 766.

[117]   *See Kassover*, 448 B.R. at 632.

the extent they related to the allowability of ESB's proof of claim.[118]  There is no

indication in the record that Judge Bernstein modified or revisited his

determination under section 157(b)(3) between the hearing on April 28, 2009, and

August 13, 2010, when Skyline filed the Plan.  In addition, Judge Bernstein

determined that the claims were core relying in part on *In re CBI Holding Co., Inc.*,

which held that certain state-law counterclaims were core under section

157(b)(2)(C).[119]  As discussed, however, the Supreme Court subsequently held in

*Stern* that section 157(b)(2)(C) was unconstitutional.  Thus, "before *Stern*,

[Skyline] had little reason to believe" that it had a viable challenge to the

determination that the claims were core or that Judge Bernstein "was not

constitutionally empowered to enter 'judgment'" on its claims.[120]

---

[118]   4/28/09 Tr. at 26.

[119]   *See* 529 F.3d 432, 464-65 (2d Cir. 2008).

[120]   *Development Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 471 (S.D.N.Y. 2011).  That is not to say that Judge Bernstein's determination was incorrect or that *CBI Holding Co.* does not survive *Stern*, points on which I take no position.  But *Stern* certainly alters the landscape.  *See, e.g.*, *Stern*, 131 S. Ct. at 2630 (Breyer, J., dissenting) ("[U]nder the majority's holding, the federal district judge, not the bankruptcy judge, would have to hear and resolve the counterclaim.  Why is that a problem?  Because these types of disputes arise in bankruptcy court with some frequency.  *See, e.g.*, *In re CBI Holding Co.*"); *Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*, 467 B.R. 712, 722 (S.D.N.Y. 2012) ("There is no implied consent where, as here, defendants seek withdrawal at

"[A] waiver of important rights should only be found where it is fully knowing."[121]  Based on Judge Bernstein's determination that the claims were core, it would be difficult to find that Skyline had voluntarily and knowingly consented to the entry of judgment on non-core claims absent express language in the Plan indicating such consent.[122]  If the claims were core, then Judge Bernstein could enter a final judgment whether or not Skyline consented, and there would be no reason for Skyline's Plan to either mention non-core claims or indicate consent under section 157(c)(2).  However, the Plan makes no mention of consent, non-

---

the close of discovery before any trial activities or judgment, and where new precedent renders unclear the authority of the bankruptcy [court] to enter final judgment on certain claims.").

[121]   *Development Specialists, Inc.*, 462 B.R. at 472.  *Accord In re Men's Sportswear*, 834 F.2d at 1138 ("[A] court should not lightly infer from a litigant's conduct consent to have private state-created rights adjudicated by a non-Article III bankruptcy judge.  Indeed, to do so would violate the spirit of *Northern Pipeline*, which emphasizes that the power to adjudicate private rights, such as the right to recover contract damages, cannot be lodged in a court lacking 'the essential attributes of the judicial power.'") (quoting *Northern Pipeline*, 458 U.S. at 87).

[122]   *See, e.g.*, *Adelphia Recovery Trust v. FLP Group, Inc.*, No. 11 Civ. 6847, 2012 WL 264180, at *3-4 (S.D.N.Y. Jan. 30, 2012) ("Defendants sought to remain in Bankruptcy Court in 2007 because, *inter alia*, the claim was 'core.'  There is no indication that Defendants, in conceding that the claim was 'core,' expressly consented to final adjudication by a bankruptcy judge.  While this may have been implied at that time, *Stern* provided defendants with a legal basis to contest the Bankruptcy Court's adjudicative power that they did not have before.") (quotation marks and alterations omitted).

34

core claims, section 157(c)(2), or entry of final judgments.

Instead, Article 11 of the Plan is a jurisdiction retention provision.[123] However, "[j]urisdiction retention language from a Plan, by itself, does not confer upon a bankruptcy court authority to enter final orders."[124] The fact that the Plan

> contains language authorizing the bankruptcy court to 'hear and determine' these claims is [ ] unavailing. This order confirmed the bankruptcy court's subject matter jurisdiction; it did not address the bankruptcy court's authority to enter final judgments under Article I.[125]

In addition, Bankruptcy Rules 7008(a) and 7012(b) provide a far more direct means for litigants to indicate their express consent to the entry of final judgment

---

[123]    Likewise, the Confirmation Order provides that "[t]he Court hereby retains jurisdiction over the Bankruptcy Case to the fullest extent provided for in Article 11 of the Plan." Bankr. Docket No. 144 ¶ 30. "Bankruptcy Case" is defined in the Plan to mean the "Chapter 11 bankruptcy case of the Debtor." Plan ¶ 1.7. To be sure, the Plan language was sufficient to retain jurisdiction. However, the issue here is whether the jurisdiction provision also addresses the authority of the bankruptcy court to enter final judgment on non-core claims.

[124]    *Lyondell Chem. Co.*, 467 B.R. at 722-23 (citing *Stern*, 131 S. Ct. at 2607 noting that the allocation of authority to enter final judgment between the bankruptcy court and the district court "does not implicate questions of subject matter jurisdiction").

[125]    *Id.* at 722.

in non-core adversary proceedings.[126]  As the language in these rules suggests,

express consent implies both an acknowledgment that a proceeding is non-core and

assent to the bankruptcy court's entry of a final judgment notwithstanding the right

to have the claim determined by an Article III judge.  A general statement that

jurisdiction is retained to "hear and determine" an adversary proceeding does not,

without more, indicate such consent because section 157(b)(1) uses the same terms

to refer to a bankruptcy court's authority to enter final judgments on core claims –

and a bankruptcy judge can exercise that authority without consent.

   As discussed, the Plan language must be considered in the context of

Judge Bernstein's determination that the proceeding was core and in light of

*Stern.*[127]  For example, section 11.1(p) of the Plan states that the court retains

---

[126] *See* Fed. R. Bankr. P. 7008(a) ("In an adversary proceeding before a bankruptcy judge, the complaint, counterclaim, cross-claim, or third-party complaint shall contain a statement that the proceeding is core or non-core and, if non-core, that the pleader does or does not consent to entry of final orders or judgment by the bankruptcy judge."); *Id.* 7012 ("A responsive pleading shall admit or deny an allegation that the proceeding is core or non-core.  If the response is that the proceeding is non-core, it shall include a statement that the party does or does not consent to entry of final orders or judgment by the bankruptcy judge.  In non-core proceedings final orders and judgments shall not be entered on the bankruptcy judge's order except with the express consent of the parties.").

[127] Judge Bernstein relied on Plan sections 11.1(b) and (j).  Section 11.1(b) states that the court has jurisdiction "[t]o determine any and all adversary proceedings, applications, and contested matters that are pending on the Effective

36

jurisdiction to "hear and determine," *inter alia*, fraudulent conveyance actions. Fraudulent conveyance actions "arise under" section 548 of the Bankruptcy Code and are listed as core in section 157(b)(2), but following *Stern*, courts have held that bankruptcy judges may not enter final judgments in such cases absent the consent of the parties.[128]  Although "hear and determine" is used in both sections 11.1(j) and 11.1(p), it cannot seriously be argued that section 11.1(p) indicates express consent under section 157(c)(2).  Following *Stern*, and absent express consent, the bankruptcy court would be required to issue proposed findings of fact

---

Date."  Rather than use the bankruptcy term of art "hear and determine," which itself is insufficient to manifest consent in the context of jurisdiction retention, section 11.1(b) only uses the term "determine," mirroring section 157(b)(3), which states that "[t]he bankruptcy judge shall *determine* . . . whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11."  Whereas section 11.1(b) refers to adversary proceedings, section 11.1(j) is a more general provision relating to claims brought *on behalf of* the "Debtor" for the enhancement of the "Estate," and, in any event, cannot be read as express consent to the bankruptcy court's authority to enjoin Skyline, now a former debtor, from compensating its employees for certain activities.  By the same token, section 11.1(i), which Judge Bernstein did not discuss, states that the court has jurisdiction "[t]o hear and determine all Claims, controversies, suits and disputes *against the Debtor* to the full extent permitted under 18 U.S.C. § 1334 and 28 U.S.C. § 157."  This provision must be read narrowly, because it expressly limits the bankruptcy court's authority to "hear and determine" claims against the debtor by what section 157 allows, and section 157 does not permit a bankruptcy court to enter a judgment in a non-core proceeding absent consent.

[128]    *See, e.g.*, *Adelphia Recovery Trust*, 2012 WL 264180, at *3-4.

and conclusions of law on either pre- or post-confirmation fraudulent conveyance actions brought by Skyline.[129]   Accordingly, I find that Skyline did not consent to the entry of a final judgment on non-core claims and the Judgment is vacated.[130]

## B.   Authority Under Section 157

There is an additional problem that requires remand of this appeal for further proceedings.  Judge Bernstein relied on cases that stand for the proposition that jurisdiction is determined at the time of the filing of an adversary proceeding and concluded that "*[a]t the time* that the [Skyline] Action was removed and the

---

[129]   *See Executive Benefits Ins. Agency v. Arkison*, 573 U. S. ___, slip. op. at 9-11 (June 9, 2014).  Skyline alleged that its claims were core based on the determination made by Judge Bernstein at the April 28, 2009 hearing.  *See* Complaint, Adv. Pro. Docket No. 30 ¶ 26.  ESB admitted that allegation, and asserted that its counterclaims were core pursuant to section 157(b)(2)(A), (B), and (O).  *See* Answer, Adv. Pro. Docket No. 33 ¶¶ 26, 267.  Skyline does not appear to have filed an answer to the counterclaims.  However, after three years of piecemeal litigation, Judge Bernstein determined in the Authority Decision that the remaining claims were non-core.  Based on these facts, I cannot conclude that Skyline consented to the entry of final judgment.  *See generally Stern*, 131 S. Ct. at 2607-08, 2614 (finding that defendant's consent to the bankruptcy court's final adjudication of its proof of claim did not mean defendant consented to the bankruptcy court's final adjudication of plaintiff's state law counterclaim).

[130]   I also note that the Authority Decision does not consider whether Skyline could have withdrawn its consent – even if it had consented – based on changed circumstances, such as the issuance of the Final Decree and the nature of the claims remaining following the parties' stipulations and the entry of partial summary judgment.

ESB Action was commenced in this Court, the claims and counterclaims asserted,

at a minimum, *'related to' or were non-core claims* in Skyline's bankruptcy

case."[131]   While jurisdiction may continue to exist, it does not follow that the

adversary proceedings continued to be "related to" the bankruptcy case for

purposes of section 157.[132]   The nature of the claims that went to trial,[133] the

confirmation of the Plan, and the issuance of the Final Decree, strongly suggest

that the claims were no longer related to Skyline's bankruptcy case.   The issue,

then, is not solely whether Skyline consented to the court hearing a non-core

matter.   If the claims are not "related to" the bankruptcy case, then even consent

might not permit the bankruptcy court to hear the matter.[134]   Thus, if section 157(c)

---

[131]     Authority Decision, 471 B.R. at 78 (emphasis added).

[132]     *See, e.g.*, *Walker*, 51 F.3d at 573.

[133]     In May 2012, Judge Bernstein noted in the Authority Decision that the order approving assumption of the Lease listed certain "disputed cure claims," including "electrical charges."  471 B.R. at 80 n.6.  However, he explained that "[i]t appears [ ] that the only remaining monetary claim asserted by ESB relates to attorneys' fees."  *Id.*  Moreover, Judge Bernstein held that ESB was not entitled to pursue attorneys' fees in connection with its counterclaims in the Skyline Action. *See id.* at 85.

[134]     *See* 28 U.S.C. § 157(c)(1) ("A bankruptcy judge may *hear* a proceeding that is not a core proceeding but that is otherwise related to a case under title 11.") (emphasis added); *Arkison*, slip op. at 10 ("With the 'core' category no longer available for the *Stern* claim at issue, we look to §157(c)(1) to

does not apply, the issuance of proposed findings of fact and conclusions of law may exceed the scope of the reference under section 157(a).  It is for this reasons that I cannot simply treat Judge Bernstein's rulings as proposed findings of fact and conclusions of law pursuant to section 157(c)(1).  Accordingly, this case is remanded for the limited purpose of asking the esteemed bankruptcy judge to consider the basis for issuing proposed findings of fact and conclusions of law pursuant to section 157(c)(1) or other authority.  In addition, the bankruptcy court should determine which claims were core when decided and, if necessary, enter a separate judgment with respect to only those claims.  Upon receiving the bankruptcy court's decision explaining the basis for his authority to issue proposed findings of fact and conclusions of law, this Court will make a final determination of whether to request such findings and conclusions or to withdraw the reference for further proceedings.[135]

---

determine whether the claim may be adjudicated as a non-core claim – specifically, whether it is 'not a core proceeding' but is 'otherwise related to a case under title 11.'  If the claim satisfies the criteria of §157(c)(1), the bankruptcy court simply treats the claims as non-core:  The bankruptcy court should hear the proceeding and submit proposed findings of fact and conclusions of law to the district court for *de novo* review and entry of judgment.").

[135]     *See, e.g.*, *Lyondell Chem. Co.*, 467 B.R. at 723 n.8 (noting that a bankruptcy court has authority to determine its adjudicative authority pursuant to *Stern* and Article III subject to review by the district court).

## VI.    CONCLUSION

Accordingly, I hold that: (1) Skyline did not consent to the bankruptcy court's power to enter a final judgment over non-core matters; (2) Skyline's claims are not core; and (3) there is a need for a further explanation as to whether the bankruptcy court had the power to hear the Skyline claims and to  issue proposed findings of fact and conclusions of law with respect to those claims.  The Judgment is hereby vacated and this case is remanded to the bankruptcy court for the limited purposes just described.

SO ORDERED:

_____
Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            June 16, 2014

**- Appearances -**

**For Appellant:**

James Wilson Perkins, Esq.
Greenberg Traurig, LLP
200 Park Avenue
New York, NY 10166
(212) 801-3188

Charles Addison Stewart, III, Esq.
Stewart Occhipinti, LLP
One Exchange Plaza
55 Broadway
Suite 1501
New York, NY 10006
(212) 239-5500

**For Appellees**:

David Scott Tannenbaum, Esq.
Stern, Tannenbaum & Bell, L.L.P.
380 Lexington Avenue
Suite 3600
New York, NY 10168
(212) 792-8484