**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------ X

**In re**

**NEW YORK SKYLINE, INC.,**

        **Debtor.**

------------------------------------------------------

**NEW YORK SKYLINE, INC.,**

        **Appellant,**

    **- against -**

**EMPIRE STATE BUILDING**
**COMPANY L.L.C., EMPIRE STATE**
**BUILDING, INC. and EMPIRE STATE**
**BUILDING ASSOCIATES, L.L.C.,**

        **Appellees.**

------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  8 / 1 / 14

**OPINION AND ORDER**

**13-cv-7686 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

On June 16, 2014, this Court issued an Opinion and Order which

vacated an Order and Final Judgment issued by Judge Stuart Bernstein (the

"Judgment") and remanded the case for further proceedings.[1]  As detailed in the

---

[1]    *See New York Skyline, Inc. v. Empire State Building Co. L.L.C. (In re New York Skyline, Inc.)*, 512 B.R. 159 (S.D.N.Y. 2014) (the "Opinion").

Opinion,[2] the Judgment was entered in an adversary proceeding involving a former debtor, Appellant New York Skyline, Inc. ("Skyline"), and Appellees ("ESB"). Skyline is ESB's tenant and licensee under a Lease and License entered into in 1993 and assumed by Skyline in the early stages of its chapter 11 bankruptcy case.[3]

Among other things, the Judgment enjoined Skyline from engaging in certain activities, including paying commissions to independent contractors working within specific areas outside the Empire State Building and selling particular items in the Building's gift shop (the "Injunctions"). On July 7, 2014, ESB filed an appeal from the Opinion. ESB now moves pursuant to Rule 62(c) and (g) of the Federal Rules of Civil Procedure for an injunction or stay of the vacatur of the Judgment, and restoration of the Injunctions, pending the appeal.[4]

---

[2]    Familiarity with the Opinion is assumed for purposes of this Opinion and Order. Any capitalized terms not defined herein shall have the meaning set forth in the Opinion.

[3]    The Lease expires at the end of June 2016. *See* Appellees' Memorandum of Law in Support of Motion for Injunctive Relief Pending Appeal Pursuant to Rule 62 of the Federal Rules of Civil Procedure ("ESB Mem."), at 14.

[4]    Because this matter comes before the Court on Skyline's appeal, ESB should have moved pursuant to Rule 8017(b) of the Federal Rules of Bankruptcy Procedure. Under Rule 8017(b), "the district court . . . may stay its judgment pending an appeal to the court of appeals" and "[a] bond or other security may be required as a condition to the grant or continuation of a stay of the judgment." Rule 62(c) provides that "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the [district] court

Oral argument was held on the motion on July 24, 2014.  For the reasons set forth below, ESB's motion is DENIED.

The standard for obtaining a stay pending appeal is well-established, as is the burden of proof.  The court must consider: "'(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the

---

may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."  One notable difference between Rule 62(c) and Rule 8017(b) is that the latter does not explicitly provide for the issuance of an injunction to preserve the status quo.  I need not decide whether injunctive relief is available under Rule 8017(b) because substantially the same standard is applied for the issuance of a stay to preserve the status quo and an injunction.  Another difference is that unlike with Rule 62(c), courts are divided as to whether the filing of an appeal divests a district court of jurisdiction to issue a stay under Rule 8017(b).  *See In re W.R. Grace & Co.*, Case No. 08-246, 2008 WL 5978951, at *3 (D. Del. Oct. 28, 2008) (collecting cases and "sid[ing] with the majority in concluding that jurisdiction is retained to hear" a motion for a stay while an appeal is pending); *In re Lambert Oil Co., Inc.*, 375 B.R. 197, 199 (W.D. Va. 2007) ("In light of the recognized inherent power of inferior courts to preserve the status quo pending appeals, the fact that Rule 8017 appears to anticipate a stay prior to the filing of a notice of appeal, does not preclude the opposite.").  I agree with the majority and conclude that the filing of an appeal does not divest this Court of jurisdiction to hear ESB's motion.  In addition, ESB's mistaken belief that Rule 62 applies is likely the source of its error in attempting to rely on Rule(g), which describes the power of the court of appeals, not this Court.  *See* Fed. R. Civ. P. 62(g) (describing the power of appellate courts); Fed. R. Bankr. P. 8017(c) ("This rule does not limit the power of a court of appeals or any judge thereof to stay proceedings during the pendency of an appeal or to suspend, modify, restore, or grant an injunction during the pendency of an appeal or to make any order appropriate to preserve the status quo or the effectiveness of the judgment subsequently to be entered.").

stay will substantially injure the other parties interested in the proceeding; and (4)

where the public interest lies.'"[5]  The first two factors are the most critical.[6]  "It is

not enough that the chance of success on the merits be 'better than negligible.'"[7]

---

[5]       *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).  ESB argues that the first prong should be read as "whether the stay applicant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal."  ESB Mem. at 3 (citing *Mohammed v. Reno*, 309 F.3d 95, 101 (2d Cir. 2002) (considering standard for vacating a stay in context of the stay of removal of an alien pending appeal of an adverse habeas decision).  As discussed in *Mohammed*, each of the factors must be balanced, and "[t]he probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury plaintiff will suffer absent the stay.  Simply stated, more of one excuses less of the other."  *Mohammed*, 309 F.3d at 101 (quotation marks omitted).  Thus, the degree of probability required on ESB's motion depends in part on the extent of the injury that ESB will suffer absent a stay or an injunction.  *See In re World Trade Center Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) ("We have also noted that the degree to which a factor must be present varies with the strength of the other factors, meaning that more of one factor excuses less of the other.") (quotation marks and alterations omitted).  Unlike in *Mohammed*, the injury here occurs in a commercial context and is mitigated by certain factors that will be discussed in Part II.B.  Accordingly, the probability of success that ESB is required to demonstrate is not "less than a likelihood of success," which the Second Circuit interpreted as meaning "something less than 50 percent" in the context of a motion to vacate a stay of removal of an alien subject to deportation while his appeal was pending.  *Mohammed*, 309 F.3d at 102.  Finally, ESB is correct that the "serious consequence" test set forth in *Carson v. American Brands, Inc.*, 450 U.S. 79, 83 (1981), is not applicable.

[6]       *See Nken*, 556 U.S. at 434.

[7]       *Id.* (quoting *Sofinet v. INS*, 188 F.3d 703, 707 (7th Cir. 1999)) (quotation marks omitted).

"By the same token, simply showing some possibility of irreparable injury fails to satisfy the second factor."[8] The burden is on the moving party to establish these elements. A stay of a judgment pending an appeal is an exercise of judicial discretion and is not a matter of right, even if irreparable injury might otherwise result.[9] Unlike a recent decision issued by a panel of the United States Court of Appeals for the Second Circuit, I take seriously the need to analyze and evaluate each of these stay factors.[10]

## II.   DISCUSSION

### A.   Success on the Merits Is Not Likely or Substantially Possible

---

[8]   *Id.* at 434-35 (quotation marks and citation omitted).

[9]   *See Gesualdi v. Laws Const. Corp.*, 759 F. Supp. 2d 432, 448 (S.D.N.Y. 2010), *aff'd in part, vacated in part, remanded on other grounds*, No. 11-332-cv, 2012 WL 1970454 (2d Cir. June 4, 2012). ESB argues that under Supreme Court precedent, a stay pending appeal returns the parties to the status quo that existed before the order to be reviewed was entered. *See Nken*, 556 U.S. at 429. While the relevant status quo for purposes of ESB's motion is the one in which Skyline is enjoined from the disputed activity, I note that when balancing the equities it is still fair for this Court to consider that for at least five years before the Judgment was entered, Skyline engaged in the challenged activity and ESB never sought a temporary restraining order or a preliminary injunction.

[10]   *See Ligon v. City of New York*, *Floyd v. City of New York*, 538 Fed. App'x 101, 102, 103 (2d Cir. Oct. 31, 2013) (no discussion of any of the four factors and explicitly declining to make any finding regarding the merits of the appeal – *i.e.*, the likelihood of success on the merits), *clarified and superseded by*, 736 F.3d 118 (2d Cir. 2013) (continuing the stay and still failing to address any of the four factors).

### 1.    Vacatur Was Not Premature

ESB argues that where "there are undecided issues relating to the propriety of injunctive relief, the injunction should remain in effect pending remand and further review."[11]  ESB contends that relevant issues remain undecided because the Opinion "remanded the case for the Bankruptcy Court to determine, *inter alia*, the underlying issue of whether any of the claims on which it had ruled were core."[12]  However, the counterclaims that gave rise to the Injunctions cannot be considered core.  They did not arise under title 11 or in Skyline's bankruptcy case.  In 2013, when trial was held on the counterclaims and the Judgment and Injunction were entered, these counterclaims were irrelevant to the assumption of the Lease and License.[13]  The counterclaims had no bearing on the administration

---

[11]    ESB Mem. at 5.

[12]    *Id.*

[13]    The Bankruptcy Court granted Skyline's motion to assume or reject the Lease and the License in 2009.  *See* Opinion, 512 B.R. at 166.  It did so even though the claims and the counterclaims that were the subject of the Electricity and Protocol Decisions had not been resolved.  *See id.*  Thus, Skyline received authorization to assume the Lease subject only to the future payment of cure funds. *See id.* at 178 n.133 ("In May 2012, Judge Bernstein noted in the Authority Decision that the order approving assumption of the Lease listed certain 'disputed cure claims,' including 'electrical charges.'  However, he explained that '[i]t appears [ ] that the only remaining monetary claim asserted by ESB relates to attorneys' fees.'  Moreover, Judge Bernstein held that ESB was not entitled to pursue attorneys' fees in connection with its counterclaims in the Skyline Action.")

of the estate – there was no bankruptcy estate in 2013 – or the allowance or disallowance of ESB's claim – which was satisfied under the confirmed and consummated Plan.[14]  Likewise, enjoining Skyline, now a former debtor, from certain activities was neither an "adjustment of the debtor-creditor . . . relationship"[15] nor an "order[] approving the use or lease of property."[16]

The Bankruptcy Court stated in the Protocol Decision that it had the authority to enter a final judgment on ESB's counterclaims based on the parties' consent.[17]  This is consistent with the Bankruptcy Court's determination in the May 2012 Authority Decision that, "[w]ith a few exceptions, the remaining claims asserted by Skyline and ESB are non-core; they arise from the parties' pre-petition

---

(citations omitted).

[14]     *See* 28 U.S.C. § 157(b)(2)(A), (B) and (C).

[15]     *Id.* § 157(b)(2)(O).

[16]     *Id.* § 157(b)(2)(M).  Nor do any of the other matters labeled as "core" in section 157(b)(2) apply to these claims.

[17]     *See New York Skyline, Inc. v. Empire State Building Co. L.L.C. (In re New York Skyline, Inc.)*, 497 B.R. 700, 703 n.3 (Bankr. S.D.N.Y. 2013) ("Protocol Decision") ("Both sides have consented to the Court's authority to enter a final judgment in this matter.") (citing Authority Decision, 471 B.R. 69, 79-80 (Bankr. S.D.N.Y. 2012)).  As explained in the Opinion, a bankruptcy court does not need the parties' consent to enter a final judgment on core claims.  *See* Opinion, 512 B.R. at 176.

agreements, and are based on state law."[18]  It is also consistent with ESB's

statement in the parties' May 2011 joint pretrial submission that the claims at issue

were "non-core matters," which the Bankruptcy Court had the authority to

adjudicate because of Skyline's express consent in the Plan and its waiver of the

right to a jury trial on its tort claims.[19]

Having determined that Skyline did not consent to the entry of a final

judgment on the claims or counterclaims, the critical issue on remand is whether

the Bankruptcy Court has the authority to issue proposed findings of fact and

conclusions of law subject to review by this Court.  As stated in the Opinion:

> [w]hile jurisdiction may continue to exist, it does not follow that
> the adversary proceedings continued to be "related to" the
> bankruptcy case for purposes of section 157.  The nature of the
> claims that went to trial, the confirmation of the Plan, and the
> issuance of the Final Decree, strongly suggest that the claims were
> no longer related to Skyline's bankruptcy case.[20]

As with the issue of consent, the question of whether the claims are "related to" the

bankruptcy case for purposes of section 157 assumes that those claims are not core.

---

[18]    Authority Decision, 471 B.R. at 79.

[19]    Adv. Pro. Docket No. 48 ¶ 4(b).

[20]    Opinion, 512 B.R. at 178.

Thus, I held that the claims at issue in the appeal were not core.[21]  In doing so, I

phrased this as "Skyline's claims are not core," when a more careful statement

would have been that neither Skyline's claims nor ESB's counterclaims decided in

2013 when the Electricity and Protocol decisions were issued were core.  Why then

did I vacate the entire Judgment and also remand, in part, so that the "bankruptcy

court [c]ould determine which claims were core when decided and, if necessary,

enter a separate judgment with respect to only those claims[?]"[22]  While the

Opinion addressed claims that were decided in 2013 when the Electricity and

Protocol Decisions were issued, the Judgment covered nineteen claims and nine

counterclaims that were, in whole or in part and in one way or another, resolved

between June 2010 and August 2013.[23]  Accordingly, it was possible that some

---

[21]    *See id.* at 179.  During oral argument ESB indicated that one issue the
parties are briefing on remand is the point in time in which a claim is considered
core for purposes of section 157.  *See* 7/24/14 Hearing Transcript ("7/24/14 Tr.") at
37.  It appears that ESB will argue that so long as the claims were core at the
beginning of the adversary proceeding, it does not matter whether Skyline
consented or if the claims continued to "relate to" Skyline's bankruptcy case.
However, the question of whether the claims at issue in the Electricity and Protocol
Decisions are core is beyond the scope of the remand because I held in the Opinion
that they were not core.  In any event, I do not believe that this argument has even
a moderate likelihood of success.

[22]    Opinion, 512 B.R. at 179.

[23]    *See* Adv. Pro. Docket No. 108.

claims referred to in the Judgment were core when they were determined.  As there was no basis for this Court to leave in place a judgment, *especially one providing injunctive relief*, after determining that the Bankruptcy Court exceeded its authority under section 157, I vacated the Judgment and remanded with the instruction that the Bankruptcy Court determine if there were any claims that were core and to enter a new judgment only as to those claims.[24]

ESB also contends that relevant issues remain undecided because I remanded the case for the additional purpose of requesting that the Bankruptcy Court determine if it had the authority to issue proposed findings of fact and conclusions of law with respect to the parties' "non-core" claims.  According to ESB, "there is no basis for assuming the Bankruptcy Court did not have this authority and in effect reversing its findings and dissolving the Injunctions, which

---

[24]    As just discussed, none of these potentially core claims resulted in the issuance of the Injunctions.  While vacating the entire Judgment was the only practical solution, there was no reason to believe it would have a detrimental impact on the parties.  The Judgment was invalid as to the claims underlying the Injunctions, each of Skyline's claims was dismissed, and ESB was not awarded a money judgment on any of its counterclaims.  I also note that there is no merit to ESB's argument that by vacating the Judgment, I improperly granted Skyline a stay of the Judgment pending its appeal to this Court.  *See* ESB Mem. at 6. Because I determined that the Judgment was invalid it has no force or effect. Skyline's failure to appeal from an order denying a stay does not shield the Judgment from scrutiny or make it immune from vacatur.

is the practical effect of the Order."[25]  However, the question of whether the

Bankruptcy Court has the authority to issue proposed findings of fact and

conclusions of law is irrelevant to whether the Judgment and the Injunctions

should be vacated.  Even assuming that the Bankruptcy Court could issue proposed

findings of fact and conclusions of law, those conclusions and findings would not

constitute a binding judgment, and any injunction it recommended would not be

effective, until entered by this Court.[26]

       Finally, the cases cited by ESB for the proposition that the Injunctions

should remain in effect pending remand do not support ESB's request for a stay.[27]

---

[25]     *Id.* at 5.

[26]     *See* 28 U.S.C. § 157(c)(1).  Contrary to Skyline's contention, I did not hold that "there remained a serious question whether the bankruptcy court had subject matter jurisdiction under 28 U.S.C. § 157 to try the state law claims at issue post-confirmation."  Appellant's Memorandum of Law in Opposition to Respondents' Motion for Injunctive Relief Pending Appeal Pursuant to Rule 62 of the Federal Rules of Civil Procedure ("Skyline Mem."), at 1.  As explained by the Supreme Court, "[s]ection 157 allocates the authority to enter final judgment between the bankruptcy court and the district court.  That allocation does not implicate questions of subject matter jurisdiction."  *Stern v. Marshall*, 564 U.S. ---, 131 S.Ct. 2594, 2607 (2011).  Rather, I held that while subject matter jurisdiction continued to exist, the Bankruptcy Court might not have authority to issue proposed findings of fact and conclusions of law if the claims at issue ceased to "relate to" Skyline's bankruptcy case within the meaning of section 157.  *See* Opinion, 512 B.R. at 175-79.

[27]     *See* ESB Mem. at 5-6 (citing *Rosen v. Siegel*, 106 F.3d 28 (2d Cir. 1997); *Jamaica Shipping Co. Ltd. v. Orient Shipping Rotterdam, B.V. (In re*

11

In *Rosen v. Siegel*, the district court had issued a preliminary injunction without citing the applicable legal standard or making findings of fact to support the injunction.[28]  Although the Second Circuit remanded the case so that the district court could render the required findings, it did not vacate the injunction for two reasons.  *First*, doing so would "'punish the movant for the district court's failure to make specific findings.'"[29]  *Second*, there was some evidence that the injunction was warranted, such that "the evidence on the record [did] not compel a ruling for either side" and the court could not determine whether the district court had committed reversible error.[30]  Unlike in *Rosen*, this Court vacated the Judgement after finding that the Bankruptcy Court lacked the authority to enter a final judgment, and the Bankruptcy Court's rationale for asserting it had the authority to

---

*Millenium Seacarriers, Inc.)*, 54 Fed. App'x 333 (2d Cir. Dec. 17, 2002); *Universal Reinsurance Co., Ltd. v. St. Paul Fire and Marine Ins. Co.*, 224 F.3d 139 (2d Cir. 2000)).

[28]     *See Rosen*, 106 F.3d at 32-33.  *Millenium Seacarriers, Inc.* relies on *Rosen*.  For that reason, and because it is substantially similar to *Rosen*, I will not discuss it separately.

[29]     *Id.* at 33 (quoting *Inverness Corp. v. Whitehall Labs.*, 819 F.2d 48, 51 (2d Cir. 1987) (alterations omitted)).

[30]     *Id.*

issue the Injunctions – *i.e.*, the parties' consent – is clear from the record.[31]  For the reasons stated here and in the Opinion, the issue on remand is not whether the Bankruptcy Court had the authority to issue the Judgment, but whether it had the authority to issue proposed findings of fact and conclusions of law subject to this Court's review.

In *Universal Reinsurance v. St. Paul Fire and Marine Insurance*, the Second Circuit considered a district court's order granting summary judgment for defendants in a case that had been litigated for almost five years without a showing of diversity jurisdiction by plaintiffs.[32]  The Second Circuit determined that there were two bars to diversity jurisdiction: (i) Universal was not a member of a foreign state for purposes of the diversity statute and (ii) plaintiffs' failure to allege that another party, Forkush, was a citizen of a particular state.[33]  Rather than vacate the

---

[31]     *See* Protocol Decision, 497 B.R. at 703 n.3 (citing Authority Decision, 471 B.R. at 79-80).

[32]     The Second Circuit explained that "[t]his case is the latest in a parade of appeals involving questions of state law only that have proceeded to final judgment on the merits – often after extensive proceedings – even though the basis for diversity jurisdiction is either lacking or in considerable doubt."  *Universal Reinsurance Co.*, 224 F.3d at 139 (citing *Franceskin v. Credit Suisse*, 214 F.3d 253, 257-59 (2d Cir. 2000) (recounting cases, vacating judgment on claims between aliens, and remanding for determination of defendant's state of incorporation).

[33]     *See id.* at 140-41.

judgment and dismiss the case for lack of subject matter jurisdiction, the Second Circuit remanded, in an "abundance of caution," so that the district court could determine whether it had subject matter jurisdiction to hear the case.[34]  The district court was directed to "enter an appropriate order vacating the judgment and dismissing this case without prejudice[, i]f, after making the above determinations, the district court conclude[d] that it lack[ed] subject matter jurisdiction over the claims in this case[.]"[35]  By contrast, this Court has already determined that the Bankruptcy Court lacked the authority to enter the Judgment, at least as it related to the claims at issue in the Electricity and Protocol Decisions.  The primary purpose of the remand is to determine whether the Bankruptcy Court has the authority to issue proposed findings of fact and conclusions of law.  In addition, declining to vacate a judgment while a case is remanded to the district court is substantially different from allowing an injunction to stand after a court has determined there was no power to issue that injunction.

## 2.    Skyline Did Not Consent

---

[34]    In particular, the Second Circuit instructed the district court to determine "(i) whether Universal is an indispensable party to this litigation such that it cannot be dropped from the case to salvage jurisdiction; (ii) Forkush's state of domicile at the time this litigation commenced; and (iii) whether, if Forkush was indeed a Bermuda domiciliary, he is a dispensable party." *Id.* at 141.

[35]    *Id.*

ESB argues that it will likely prevail on its appeal because Skyline's "significant involvement in litigating this matter in the Bankruptcy Court . . . demonstrates that Skyline" consented to the Bankruptcy Court's entry of a final judgment on non-core claims.[36]  The record does not support this conclusion.  The only reason the Skyline Action was in the Bankruptcy Court was because ESB removed it to that court; Skyline promptly sought to have the action remanded and, in the alternative, asked the Bankruptcy Court to abstain; and, just three weeks after the Supreme Court issued *Stern v. Marshall*, Skyline raised the Bankruptcy Court's lack of authority and, in the alternative, renewed its requests for remand and abstention.

Nevertheless, ESB contends that Skyline was content to proceed in the Bankruptcy Court but had a change of heart after it lost at trial.[37]  ESB claims that Skyline consented to the adjudication of its claims and ESB's counterclaims for all purposes in April 2009 when it identified certain claims and counterclaims as being integral to its motion to assume or reject the Lease and License and agreed to an expedited trial on those claims.[38]  However, Skyline's conduct does not

---

[36]     ESB Mem. at 7.

[37]     *See id.* at 13.

[38]     *See id.* at 7.

demonstrate consent, express or otherwise.

Skyline filed a motion to remand or abstain and the following day filed a motion for a ninety-day extension of the deadline to assume or reject the Lease and License pursuant to section 365 of title 11 of the United States Code.  A hearing on both motions was held on April 28, 2009.  As reflected in the transcript of that hearing, Skyline's motion to remand or abstain was denied in part because certain claims were believed to be integral to Skyline's forthcoming motion to assume or reject the Lease and the License, and at the hearing the Bankruptcy Court asked the parties to identify the claims that needed to be resolved in the context of such a motion.[39]  Skyline identified the electrical charge claim as such an issue, presumably because it could impact the amount of any cure payment required to assume the Lease and the License, as well as the sales commission issue because this could impact the profitability of its business.  Following this colloquy, Judge Bernstein stated:

> See if you can come up with [the] . . . issues you think should be decided or have to be decided in the context of a motion to assume and so there's no question about the effect of any findings or conclusions I'll carve those out of the adversary and try them simultaneously so they'll be part of the adversary.  In essence, I'll

---

[39]   *See* 4/28/09 Hearing Transcript, Bankr. Docket No. 30, at 27-28, 32.

order separate trials on those issues.[40]

In accordance with this direction, on May 27, 2009, the Bankruptcy Court entered a stipulation and scheduling order that set forth the claims and counterclaims in the adversary proceeding that the parties agreed to try on an expedited basis in connection with Skyline's assumption motion.[41]

To place Skyline's conduct in its proper context, it is important to consider the statutory framework under the Bankruptcy Code for assuming a lease of nonresidential real property.  Under section 365(d), a debtor has 120 days from the filing of its petition to assume such a lease.[42]  A lease that is not assumed within that period of time is deemed rejected.[43]  The deadline can be extended by the bankruptcy court for cause for an additional ninety days, but following the initial for-cause extension, "the court may grant a subsequent extension only upon prior written consent of the lessor in each instance."[44]  In other words, a debtor

---

[40]    *Id.* at 29.

[41]    *See* Adv. Pro. Docket No. 8.

[42]    If a chapter 11 plan is filed before then, the plan must state whether unexpired leases are assumed.

[43]    *See* 11 U.S.C. § 365(d)(4)(A).

[44]    *Id.* § 365(d)(4)(B)(ii).

faced with a recalcitrant landlord must assume a nonresidential lease within 210 days of filing for bankruptcy relief.  Here, Skyline filed its petition on January 12, 2009, meaning that prior to the initial extension, Skyline had until May 12, 2009 to assume the Lease.  Following the extension granted by the Bankruptcy Court on April 28, 2009, Skyline had until August 10, 2009 to assume the Lease, unless it obtained the prior written consent of ESB.

Thus, to the extent that the parties' claims were relevant to the assumption of the Lease, Skyline had little choice but to agree to their resolution before the Bankruptcy Court.  However, at the hearing on Skyline's assumption motion, the parties indicated that they had agreed on a cure amount, and ESB indicated that it would only oppose assumption if Skyline prevailed on its cause of action seeking to rescind the May 2005 Agreement.[45]  This was because Skyline had determined that resolution of the claims identified in the May 27, 2009 stipulation and scheduling order was not in fact necessary for assumption purposes.[46]  And, as already noted, the Bankruptcy Court approved the assumption

---

[45]     See 8/5/09 Hearing Transcript ("8/5/09 Tr."), Bankr. Docket No. 55, at 4, 75-76.

[46]     See Opinion, 512 B.R. at 166.

18

of the Lease and License without resolution of those claims.[47]

Nevertheless, ESB argues that because the Bankruptcy Court raised the issue of abstention and remand at the August 5, 2009 hearing, Skyline's failure to seek abstention or remand at that point manifested consent to have all claims and counterclaims adjudicated by the Bankruptcy Court.[48]  However, the Bankruptcy Court's comments primarily concerned Skyline's claim for rescission of the May 2005 Agreement.  ESB had sought summary dismissal of that claim in a July 2009 motion that was pending at the time of assumption.[49]  Specifically, the Bankruptcy

---

[47]     *See id.*

[48]     *See* ESB Mem. at 8-9.

[49]     *See* Adv. Pro. Docket No. 17.  In fact, the bulk of the relief sought in the parties' motions pending at the time of the assumption of the Lease and License was sought by ESB, which had moved pursuant to Rule 12(c) for judgment on the pleadings to dismiss Skyline's Third and Twelfth Claims and pursuant to Rule 56 for summary judgment on Skyline's First, Third, Eleventh, Twelfth, and Thirteenth Claims for Relief.  *See Empire State Building Co. L.L.C. v. New York Skyline, Inc. (In re New York Skyline, Inc.)*, 432 B.R. 66, 70 (Bankr. S.D.N.Y. 2010) ("June 2010 Opinion").  Skyline merely sought a declaration that paragraph 42 of the Lease was ambiguous.  *See id.*; *see also* New York Skyline, Inc.'s Memorandum of Law in Support of Its Motion for Summary Judgment, Adv. Pro. Docket No. 13.  The Bankruptcy Court denied Skyline's motion, holding that it was "not appropriate to use summary judgment as a vehicle for fragmented adjudication of non-determinative issues."  June 2010 Opinion, 432 B.R. at 88.  The Bankruptcy Court explained that "[w]hile paragraph 42 is clearly germane to the contract claim relating to the appropriate electricity charges, Skyline is essentially asking for summary judgment that it would be inappropriate to grant summary judgment on

Court noted that because it could not vacate the stipulation of discontinuance that Skyline had agreed to in state court – only the state court could – Skyline would not be able to establish that the parties could be restored to the status quo.  As this is an essential element of a rescission claim, the Bankruptcy Court expressed its concern that this claim would have to be dismissed.[50]  But as of June 21, 2010, the rescission claim had little relevance to this case.  The Bankruptcy Court determined that it could be dismissed on three independent grounds, including that Skyline's assumption of the Lease and License was an act of ratification that precluded rescission.[51]  Thus, the rescission claim, which was both defective and dismissed, could not form the basis of a motion to remand or abstain.

ESB also argues that Skyline indicated its consent by not seeking to withdraw the reference.[52]  The notion that Skyline should have sought to withdraw the reference highlights one of the problems underlying the Bankruptcy Court's continued retention of these cases, particularly following confirmation of the Plan

---

that contract claim.").  *Id.*

[50]     *See* 8/5/09 Tr. at 91-100.

[51]     *See* June 2010 Opinion, 432 B.R. at 82.

[52]     *See* ESB Mem. at 8.

on October 12, 2010, and its subsequent consummation.  Had the reference been

withdrawn, aside from one or two claims and/or counterclaims that were premised

on bankruptcy law, all of which were resolved by mid-2011,[53] the district court

would have had before it purely state law claims.  In the absence of federal claims,

the most likely result would have been remand to the state court based on

principles of supplemental jurisdiction.[54]  Asking the district court to withdraw the

reference, in the hope that the district court would remand to the state court, would

only have prolonged the already protracted proceeding, particularly given that an

application to remand had twice been denied.  It is therefore difficult to

secondguess Skyline's decision not to move to withdraw the reference.[55]

---

[53]      *See* Opinion, 512 B.R. at 167.

[54]      *See, e.g.*, *Gonzalez v. Micelli Chocolate Mold Co.*, 514 Fed. App'x 11,
12 (2d Cir. Mar. 4, 2013) ("[W]here the federal claims are dismissed before trial,
the state claims should be dismissed as well."); *Selinger v. City of New York*, 453
Fed. App'x 93, 96 (2d Cir. Dec. 23, 2011) ("Because [defendant] was entitled to
summary judgment on [the] federal claims, the district court was within its
discretion to decline exercising supplemental jurisdiction over [ ] remaining state
law claims.") (citing *Doninger v. Niehoff*, 642 F.3d 334, 357 (2d Cir. 2011)).

[55]      At a pretrial conference on June 16, 2011, Skyline's counsel indicated
that it had looked at the case law on withdrawing the reference and concluded that
it would be unsuccessful.  *See* 6/16/11 Hearing Transcript, Adv. Pro. Docket No.
74, at 2.  Little elaboration is given, but as just suggested, withdrawal of the
reference was not really the relief that Skyline wanted and, in any event, *Stern* was
decided the following week, which gave rise to Skyline's renewed motion for

ESB further argues that at a pretrial conference held on June 16, 2011, Skyline consented to the Bankruptcy Court's authority to enter a final judgment on its claims by agreeing to waive its right to a jury trial on its tort claims.[56]  ESB notes that, "Skyline went so far as to agree on the record to withdraw its jury demand so that the Bankruptcy Court would have the proper jurisdiction to try the case . . . ."[57]  However, as Skyline later explained, it had "abandoned its right to a jury trial on its tort claims because research disclosed that a motion to withdraw the reference would be futile in June 2011."[58]  Following *Stern*, which was issued a week or so later, Skyline challenged the authority of the Bankruptcy Court to issue a final judgment on its claims.[59]  But the Authority Decision rejected Skyline's arguments finding that it had expressly consented in the Plan to the entry of final

---

remand and abstention and its challenge to the Bankruptcy Court's authority to enter a final judgment in the adversary proceeding.  Skyline's second request for remand or abstention was denied nearly a year later.  *See* Authority Decision, 471 B.R. at 80 ("[T]o the extent that Skyline appears to be asking the Court to reconsider its prior decision not to remand or abstain, I note that Skyline has not made such a motion, and even if it had, the motion to reconsider would be untimely (by nearly 3 years).").

[56]     *See* ESB Mem. at 9.

[57]     *Id.* at 10.

[58]     Adv. Pro. Docket No. 65 at 19.

[59]     *See id.* at 14-20.

22

judgment on all non-core claims.[60]

   In short, a careful review of the record indicates that this is not a case where "[Skyline's] protest" after the fact "more closely resembles an afterthought than a bona fide objection."[61]  As discussed in the Opinion, "'a court should not lightly infer from a litigant's conduct consent to have private state-created rights adjudicated by a non-Article III bankruptcy judge,'" because "'to do so would violate the spirit of *Northern Pipeline*, which emphasizes that the power to adjudicate private rights, such as the right to recover contract damages, cannot be lodged in a court lacking the essential attributes of the judicial power.'"[62]

---

[60] *See* Authority Decision, 471 B.R. at 79-80.

[61] *In Men's Sportswear, Inc. v. Sasson Jeans, Inc. (In re Men's Sportswear, Inc.)*, 834 F.2d 1134, 1138 (2d Cir. 1987).

[62] Opinion, 512 B.R. at 176 n.121 (quoting *Men's Sportswear, Inc.*, 834 F.2d at 1138) (quotation marks omitted).  The Court has reviewed and rejects ESB's remaining arguments.  For example, ESB suggests that it was improper to invalidate the Judgment and the Injunctions based on the Bankruptcy Court's lack of authority because Skyline never appealed from the Authority Decision and its appeal was limited to the electricity and protocol claims.  *See* ESB Mem. at 10.  An appeal from the Authority Decision would have been an interlocutory appeal, and thus not mandatory, while Skyline's appeal from the Judgment challenged the Bankruptcy Court's authority to enter a final judgment on the state-law claims.  *See* Appellant New York Skyline's Memorandum of Law in Support of Appeal from Decisions and Orders of the Bankruptcy Court at 14 ("Regardless [of] whether the claims asserted in the Skyline Action were core or non-core and regardless of any purported consent, the Bankruptcy Court still lacked authority to enter final

### 3.    Due Deference Was Given to the Bankruptcy Court's Interpretation of the Confirmation Order and the Plan

ESB asserts that this Court failed to give due deference to the

Bankruptcy Court's interpretation of the Confirmation Order.[63]  The Confirmation

Order merely states that "'[t]he Court hereby retains jurisdiction over the

Bankruptcy Case to the fullest extent provided for in Article 11 of the Plan.'"[64]

The Bankruptcy Court did not interpret the Confirmation Order, and the

Confirmation Order does not address consent under section 157(c)(2).  As for the

Bankruptcy Court's interpretation of the Plan, I agree that where a bankruptcy

judge's order is "ambiguous . . . [his] interpretation of [that] order warrants

---

judgment on state-law claims that were not central to the bankruptcy process and unrelated to the claims allowance process.").  Moreover, ESB never challenged the scope of the appeal.  *See* Appellant New York Skyline's Memorandum of Law in Support of Appeal from Decisions and Orders of the Bankruptcy Court at 1-2 ("Skyline appeals from three separate orders entered during this case which are included in the Judgment.  First, Skyline appeals from the Court's Memorandum Decision Regarding Motion for Partial Summary Judgment, dated May 11, 2012 ("Order I"), in which Order, *inter alia*, the court below dismissed Skyline's challenges to its subject matter jurisdiction  and constitutional authority to enter a final judgment in this case.").

[63]    *See* Appellees' Reply Memorandum of Law in Further Support of Motion for Injunctive Relief Pending Appeal Pursuant to Rule 62 of the Federal Rules of Civil Procedure ("ESB Reply"), at 3-4.

[64]    Opinion, 512 B.R. at 176 n.123 (quoting Bankr. Docket No. 144 ¶ 30).

24

customary appellate deference."[65]  However, I reviewed the plain language of the

Plan and I rejected the Bankruptcy Court's interpretation of that language for the

reasons stated in the Opinion.[66]

        Accordingly, I conclude that the first factor, likelihood of success on

the merits, weighs heavily against granting the relief sought by ESB.

### B.    Irreparable Harm[67]

        Skyline admits that following vacatur of the Injunctions, it rehired

twenty of the sixty independent contractors to work in the barred area outside the

Building.[68]  ESB argues that this Court should not have vacated the Injunctions

because the Bankruptcy Court determined in the Protocol Decision and in its denial

---

[65]    *Casse v. Key Bank Nat'l Assoc. (In re Casse)*, 198 F.3d 327, 333 (2d Cir. 1999) (quotation marks omitted).

[66]    *See* Opinion, 512 B.R. at 177-78 & n.127.  ESB suggests that the Bankruptcy Court also determined that the claims were core, which finding is also subject to substantial deference.  *See* ESB Reply at 3.  But the Bankruptcy Court made no such finding.  *See* Authority Decision, 471 B.R. at 79 ("With a few exceptions, the remaining claims asserted by Skyline and ESB are non-core; they arise from the parties' pre-petition agreements, and are based on state law.").

[67]    Only the injunction relating to the protocol provision appears to be at issue because Skyline has represented that it "has no present intention to resume sales of products in its gift shop about which ESB complains."  Skyline Mem. at 6. The Court will of course hold Skyline to this representation.

[68]    *See id.* at 21.

of the stay of the Injunctions that ESB would be irreparably harmed.[69]  This

argument is without merit.  *First*, the Protocol Decision addressed whether ESB

had established a right to specific performance under New York law, and did not

mention irreparable harm or the other stay factors.[70]  *Second*, this Court is not

bound by the Bankruptcy Court's findings on Skyline's motion for a stay in the

context of ESB's present motion because the parties have different burdens on the

respective motions and the circumstances may well have changed.  For example, it

was Skyline's burden on its motion to show that ESB would not be *substantially*

harmed, whereas here it is ESB's burden to show that it would be *irreparably*

harmed.[71]

---

[69]     *See* ESB Mem. at 2, 14.

[70]     *See* Protocol Decision, 497 B.R. at 709 ("Where a party seeks an
injunction granting specific performance, a party can be compelled to perform its
contractual obligations if (1) there is a valid contract; (2) plaintiff has substantially
performed under the contract and is willing and able to perform its remaining
obligations; (3) defendant is able to perform its obligations; and (4) plaintiff has no
adequate remedy at law.") (quotation marks omitted).  As I found that the
Judgment was invalid and that there was a question as to whether I could treat the
Bankruptcy Court's findings as proposed conclusions of law and findings of fact, I
have not reached the merits of ESB's counterclaims.

[71]     *See New York Skyline, Inc. v. Empire State Building Co. L.L.C. (In re
New York Skyline, Inc.)*, No. 09-1145, 2013 WL 5487938, at *8 (Bankr. S.D.N.Y.
Oct. 2, 2013) ("Skyline bears the burden of proving that a stay pending appeal will
not cause substantial injury to ESB.").

While I agree that some measure of harm to ESB's reputation and good will may result from the aggressive behavior of sales persons operating across the street from the Building,[72] the extent of that harm is mitigated by the fact that this condition existed throughout this litigation, roughly five years before the Bankruptcy Court issued the Injunctions.  In addition, as admitted by ESB during oral argument, third-party contractors that are not affiliated with Skyline are permitted to sell tickets outside the Building, making it unclear whether Skyline has caused any damage to ESB's reputation.[73]  Accordingly, I conclude that this factor weighs only slightly in favor of granting the relief sought by ESB.

### C.    Substantial Harm to Skyline

ESB does not address this requirement in its opening brief.  Skyline argues that restoration of the Injunctions will result in substantial injury because it lost approximately thirty percent of its revenue from ticket sales and approximately $2.25 million in profit on an annual basis while the Injunctions were in place.[74]  In

---

[72]    *See* 7/21/14 Affidavit of Jean-Yves Ghazi, Director of ESRT Observatory TRS, L.L.C., the successor of Appellee Empire State Building, Inc., ¶¶ 5-7, 10, 14-15.

[73]    *See* 7/24/14 Hearing Tr. at 34-36.

[74]    *See* Skyline Mem. at 21.

27

addition, the issuance of a stay would require Skyline to terminate the twenty independent contractors it retained following this Court's vacatur of the Judgment and the Injunctions.[75]  ESB responds that any injury is a "natural result of Skyline having to adhere to the terms of its own agreements and, in any event, is compensable by damages . . . ."[76]  While the harm does appear to be compensable by damages, it remains the case that the Bankruptcy Court did not have authority to enter a final judgment on the claims at issue, meaning that reinstatement of the Injunctions would violate Skyline's rights.  On balance, I find that this factor is neutral and does not weigh either for or against granting the relief sought by ESB.[77]

### D.    Public Interest

ESB does not dispute that the public interest is not implicated, but

---

[75]    *See id.* at 22.

[76]    ESB Reply at 8.

[77]    At the same time, ESB argues that a bond is not required and has not stated that it would be willing to post a bond.  *See id.* at 10 ("In the unlikely event that Skyline is injured by the stay, ESB is more than capable of satisfying any judgment.").  It is unclear from this record whether a bond is necessary to protect Skyline from the harm caused by the issuance of a stay.  But the failure of a party to address its burden with respect to a bond may weigh against granting a stay.  *See In re W.R. Grace & Co.*, 475 B.R. 34, 209 (D. Del. 2012) ("It has been recognized that if the movant seeks the imposition of a stay without a bond, the applicant has the burden of demonstrating why the court should deviate from the ordinary full security requirement.") (quotation marks omitted).

suggests that because "the parties spent over four years and many hundreds of thousands of dollars litigating their respective claims . . . in the Bankruptcy Court[,] and [t]he Bankruptcy Court spent countless hours hearing and determining the claims[,] . . . [i]t would be a waste of judicial resources and against public policy to prematurely dissolve the Injunctions and they should be restored pending the Appeal."[78]  But as discussed above, vacatur of the Judgment and the Injunctions was not "premature."  Accordingly, the Court finds that this factor does not weigh in favor of granting the relief sought by ESB.

Having weighed each of the factors relevant to the issuance of an injunction or a stay pending appeal, I conclude that because there is little likelihood that ESB will prevail on the merits, neither a stay nor an injunction is warranted despite the possibility that ESB could suffer injury to its reputation and good will. In short, there is no basis to preserve the "status quo" created by the invalid Judgment and Injunctions.

## III.   CONCLUSION

For the foregoing reasons, ESB's motion is denied.

––––––––––––––––

[78]      ESB Mem. at 16.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            July 31, 2014

**- Appearances -**

**For Appellant:**

James Wilson Perkins, Esq.
Greenberg Traurig, LLP
200 Park Avenue
New York, NY 10166
(212) 801-3188

Charles Addison Stewart, III, Esq.
Elin M. Frey, Esq.
Stewart Occhipinti, LLP
One Exchange Plaza
55 Broadway
Suite 1501
New York, NY 10006
(212) 239-5500

Howard J. Berman, Esq.
Ellenoff Grossman & Schole LLP
1345 Avenue of the Americas
New York, NY 10105
(212) 370-1300

**For Appellees:**

David Scott Tannenbaum, Esq.
Francine Nisim, Esq.
Karen S. Frieman, Esq.
Stern, Tannenbaum & Bell, L.L.P.
380 Lexington Avenue
Suite 3600
New York, NY 10168
(212) 792-8484

William Heur, Esq.
Duane Morris LLP
1540 Broadway
New York, NY 10036
(212) 692-1000